Johnson, J.
In the case which involved the property first purchased, the testimony of Herman C. Newman, the plaintiff in the action, was the only evidence in support of some of the material allegations of his petition. In the case which concerned the property purchased several months later, the allegations of the petition were supported by the testimony of a son Arthur, brother .to Edward E. Newman.
On the trial of the first case in the court of appeals, on appeal, that court held that as Edward, the son to whom the money was loaned, had died, the father, Herman C. Newman, the plaintiff, was incompetent as a witness and that the competent, evidence introduced was not of sufficient probative force to warrant the relief prayed for.
It is contended that the rejection of the father’s testimony by the court of appeals was error. Its holding was based upon Section 11495, General Code, the pertinent part of which follows: “A party shall not testify when the adverse party * * * is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of the deceaséd person.” Certain specified exceptions are' stated, and then follows the clause, “and when a case is plainly within the reason and spirit of the next three preceding sections, though not within the strict letter, their principles shall be applied.”
It¡ was the view of the court of appeals that although Theo. Elizabeth, the wife of the deceased son, was not the grantee or devisee of a deceased *235 person, yet the case was plainly within “the reason and spirit of the next three preceding sections.”
The plaintiff in error earnestly insists that the cases of Cochran v. Almack, 39 Ohio St., 314, and Cockley Milling Co. v. Bunn, Admx., 75 Ohio St., 270, sustain his contention.
In the Cochran case it is held in the syllabus: “A defendant is a competent witness to transactions with a deceased agent of plaintiff, though not occurring in his presence, if within the scope of such agent’s authority.” It would seem to be clear that a deceased agent does not sustain a relation analogous to any of the persons named in the section. In the opinion the three sections of the statute here involved are discussed by the court, and it concludes by saying: “It follows, that if a case is provided for, by the terms of either of the sections, no occasion can arise for invoking the spirit and reason of the statute to supply the omission of its letter or terms.” I do not think that conclusion logically follows.
In the Cockley case it is held that the general manager of a corporation in a suit against an executor or administrator is not disqualified by Section 5242, Revised Statutes (now Section 11495, General Code), to testify to facts occurring before the death of the decedent.
In Elliott v. Shaw, 32 Ohio St., 431, it is pointed out that in its original form, the section only excluded the party when the adverse party was an executor or administrator, and that - since then numerous amendments have been made from time to time. In that case the question was whether in *236 a suit by an assignee of a chose in action from,a deceased person, the opposing party is barred. The court held that as assignees were not mentioned in the statute it did not apply. But the following year the legislature amended the statute so as to read in its present form, and in that amendment the reason and spirit clause was inserted.
The inference would seem to be reasonable that the legislature by the insertion of the clause intended to abrogate the construction requiring absolute particularity, which had theretofore been applied, and therefore enacted that when a case came within the reason and spirit of the sections the provision should apply, although it might not come within the letter.
Section 11493, General Code, makes all persons competent witnesses except those of unsound mind, etc. Section 11494, General Code, excludes privileged communications to attorneys, physicians, etc. Section 11495, General Code, places a limit on the full competency of the party and makes the party incompetent -when the adverse party defends as grantee, devisee, etc., of a deceased person. And then comes the reason and spirit clause. Under this section Mr. Newman, the father, would be incompetent if the wife of the deceased son; Theo Elizabeth, was the grantee of her husband. She is not the grantee of her husband, but she is to all intents and purposes the'grantee of her husband — his real grantee. If the deceased son had taken the title in his own name, the title would have passed to his heir on his death, and the father in that event would be incompetent as a witness. If *237 the son had taken the title and had willed the property to his wife, the father would be incompetent,. and if the son had taken the title and later conveyed it direct to his wife, as grantee, the father could not have testified.
Does the fact that the husband caused the grant to be made direct from the original owner to her, instead of to himself and then to her, change the spirit of it? I think not. The case is within the reason and spirit of the sections. To hold that if a witness came within either of the three sections he would be competent would be to regard only the ‘letter of the statute. It would disregard and disobey the mandate of the legislature that courts should observe the reason and spirit of the statute.
However, the court is not agreed upon the question as to the competency of the father) and we-come to the contention of counsel for the wife of the deceased son, that if it be conceded that an oral agreement was made by the son to give his father a mortgage the agreement was void under the statute of frauds.
The Tacts shown are that in April, 1918, the father loaned to Edward, the son, $5,000, and received from him his promissory note for that sum payable in one year from its date; that the loan was made at the request of the son, who told his father he would use the money for the purchase of the land described in the petition, and that if his father would loan him the amount he would give him a mortgage on the property to secure the loan; that the loan was made pursuant to that arrangement; that the property was purchased and on the son’s *238 direction was deeded directly to his wife, the defendant, Theo Elizabeth Newman; and that the mortgage was never delivered and the son died from influenza in Kansas City the following Christmas.
As to the property subsequently purchased, the father, in June, 1918, loaned Edward $4,900 and received his promissory note therefor, and the son, Arthur, testified that his brother told him he was going to give the father a mortgage on both parcels for the entire amount loaned. The father had also testified to this, and his testimony was, as above stated, excluded in the court of appeals. No mortgage on either piece of property was ever signed, and the'father holds the two notes, one for $5,000 and one for $4,900, unpaid.
There is no charge of actual fraud in the case, and the father on the witness stand expressly disclaimed that the son had any intent to cheat or deceive him, and no claim is made that the son overreached the father in any way. It is conceded that the son was an honest and conscientious business man.'
The situation presented is that the father loaned the son the sums of money stated and the - son promised to give a mortgage to secure the promissory notes given to the father for the loans. Was the agreement to give the mortgage void within the statute of frauds? Were the circumstances such as to invoke the equity powers of the court to impress a trust on the property ?
It is contended by counsel for the wife of Edward that the parol agreement to give the mortgage on *239 the real estate is unenforceable under our statutes, Section 8620, General Code, and Section 8621, General Code, as to conveyance and frauds and perjuries; that no trust was created by the transaction; that nothing akin to a vendor’s lien is involved in it; that the failure to give the mortgage does not constitute a fraud, so as to give a court of equity jurisdiction; and that the insolvency of the estate of Edward does not prevent the operation of the statute of frauds.
Section 8620, General Code, provides:- “No * * * interest * * * in, or out of lands * * * shall be assigned, or granted except by deed, or note in writing, signed by the party so assigning or granting it, * * * or by act and operation of law.”
Section 8621, General Code, provides: “No action shall be brought whereby * * * to charge a person * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in, or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith.”
On the other hand counsel for the father contend 'that equity will not allow one party to be unjustly enriched by retaining benefits received under a contract, which is within the statute of frauds, and they contend that this is a case of unjust enrichment. They agree that the transaction itself did not create a trust in the property. But they ask the court to construct a trust as a remedy to prevent unjust enrichment. They do not claim that *240 the transaction created a vendor’s lien. They concede, as obviously it must be conceded, that the father does not stand in the position of one having a vendor’s lien; that he could not enforce his claim against a creditor of Theo Elizabeth Newman who had levied on the property, or claimed a preference, in case she went into bankruptcy. They concede that a parol agreement to give a mortgage is on its face within the statute of frauds, and that strictly speaking the contract itself is unenforceable although courts of equity do not always make this distinction.
They insist that it may or may not be true that the refusal to perform an oral promise to give a mortgage “is not such fraud as to give a court of equity jurisdiction,” but they contend that if the refusal amounts to a fraud, in that it allows one party to retain an unconscionable advantage, such refusal does perpetrate a fraud and give a court of equity jurisdiction.
They rest their case on the proposition that equity will prevent an unjpist enrichment under certain facts and circumstances, and contend that this case presents such a situation.
The briefs of counsel on both sides contain many authorities touching various phases of the questions' presented. The authorities cited by counsel, in which propositions are stated upon which relief has been granted, or in which relief has been refused, dp not in either alternative agree upon the grounds on which their conclusions are rested.
It is also apparent that' in some jurisdictions , courts have followed a different rule from that *241 which has been consistently followed in Ohio; and likewise in a number of cases it is shown that the court in the exercise of its equity powers has, because of the peculiar circumstances of the cases, felt called upon to impress a trust upon the property involved.
In this state there has been a very substantial adherence to the rule that upon parol contract for an interest in lands mere payment of the consideration does not take the case out of the statute of frauds and perjuries.
In Stansell v. Roberts et al., 13 Ohio, 148, it appeared that one Jennings loaned to Roberts the money to make the first payment on land purchased. Roberts executed a mortgage in Jennings’ favor, but Jennings neglected to have his mortgage recorded until after a mortgage to Stansell was recorded.' The claim of Jennings’ counsel was that as Stansell knew of Jennings’ mortgage his lien must be postponed to that of Jennings. In disposing of Jennings’ claim that his lien was in the nature of a vendor’s lien, the court says: “The purchase money is what passes between vendor and purchaser, and the lien is the right of the vendor to look to the thing sold, for the price for which it was sold. But money advanced by,a third person, to enable the purchaser to buy, is no part of this transaction; nor is he who advances privy to the sale. Nor can it be .construed into a resulting trust; that exists where land is purchased with the money of another.”
*242 In the case before us the property was not purchased with the money of Herman Newman, the father. He concedes he loaned the money to Edward and received his note for it. He testifies that after he loaned it he had no right to direct what Edward was to do with it.
In Watson v. Erb, 33 Ohio St., 35, it is held that “The fraud against which equity will grant relief, notwithstanding'the statute of frauds, consists in the refusal to perform an agreement upon the faith of which the plaintiff has been misled to his injury, or the defendant has secured an unconscionable advantage, and not in the mere moral wrong involved in a refusal to perform a contract, which, by reason of the statute of frauds, can not be enforced by action.”
‘In the opinion, at page 48, it is said: “It must appear that the promise was used as a means of imposition and deceit. If the case taken as a whole is one of fraud, the verbal promise may be received in evidence as one of the steps by which the fraud, was accomplished. To deduce the fraud from the contract and then give effect jto the contract on the score of fraud, is reasoning in a circle. The fraud which will give jurisdiction to compel a performance of the'parol trust, must consist in something more than a mere breach of parol undertaking.”
In the case before us it is not claimed that the son, Edward, sought to cheat and defraud his father by anything that was said or done in'the making of the oral agreement. H. C. Newman, the father himself, disclaims that his son had any such purpose, or did anything to deceive him. There is *243 no contention that Theo Newman, the wife of the son, was party to any arrangement, or has been in any of the transactions guilty of any fraud.
It is further said in Watson v. Erb, supra, page 48:
“Thus, if the actual purchaser agreed to buy and hold for the real purchaser, with money loaned by him to the latter for that purpose, he is a trustee of the title for the borrower. [Citing cases.]
“Upon the same principle, a deed absolute on its face, may be converted into a mortgage, by showing that it was in consideration of a loan; and equity will treat the grantee as a trustee of the title, and compel a reconveyance on payment of the debt. This is so, whether there was a verbal defeasance, or not. But the mere breach of a parol agreement, is not such a fraud as takes the case out of the statute. [Citing cases.]
“If this were not so, the consequence would be, that the common law rule, that parol contemporaneous evidence can not be admitted to vary the terms of a written agreement, and also the provisions of the statute of frauds, would be abrogated.”
In Newton v. Taylor, 32 Ohio St., 399, it is held:
“An implied or constructive trust may be established from the acts of a party who has obtained money upon the faith of his agreement to buy lands in the name of his wife, and, having bought them, takes the title to himself. * * *
“If the husband is a participant in inducing the purchase for the wife’s benefit, receives the money for that purpose to invest in her name, and then *244 buys for himself, this is such a fraud as will create a trust against him and those claiming under him with notice.”
In the opinion, at page 409, it is said : “The opinion, however,, of Browne, in his treatise on frauds, seems to be that the fraud which suffices to lay the foundation of a trust is not simply that fraud which is involved in every deliberate breach of contract. There must have been some agency in bringing about the result, without which a mere refusal to perform the trust is not enough. * * * And Perry says that the mere breach of a parol agreement will not create a trust.. * * * Wash-burne also seems to entertain the same opinion expressed by Perry and Browne, that a mere subsequent refusal to do what had been agreed, is not such a fraud as will create a constructive trust.”
In Crabill v. Marsh, 38 Ohio St., 331, it is held that “On a verbal agreement for the conveyance of land, the payment of the purchase money, whether made in money or services, will not take the agreement out of the operation of the statute of frauds.”
In the opinion, at page 338, it is said: ’’That mere payment of the purchase 'money, whether made in money or services, will not take the case out of the operation of the statute, we regard as well settled. * * * The ground - upon which courts of equity interfere, in such cases, is that of fraud. The jurisdiction is founded, not upon the agreement, but upon the fraud. And a mere refusal to perform a parol agreement, void under the statute-of frauds, is in no sense fraud, either in law or equity.”
*245 The statute of frauds is founded in wisdom and has been justified by long experience. As was said by Mr. Justice Grier in Purcell v. Miner, 4 Wall., 513, 517, the statute is “absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol testimony.” It should be enforced. Courts of equity, to prevent the statute from becoming an instrument of fraud, have in many instances relaxed its provisions. But this case is barren of any averment or proof, or offer of proof, which ought to induce a court of equity to afford relief.
It is said in 39 Cyc., 135: “It is a well-settled rule that where money is advanced by way of a loan to be used by the borrower in the purchase of property in his own name no resulting trust arises in favor of the lender, although the money is. loaned under a parol agreement that the borrower’s interest in the property shall rest in the lender to the extent of his loan.”
In the brief of counsel for Theo Elizabeth Newman many authorities are cited in support of their contentions as to the various phases of the case, but, as is the case in the brief of counsel for the father, they differ widely upon the grounds on which their conclusions are reached.
Concerning the contention of counsel for Herman C. Newman that the court should construct a trust as a remedy to‘prevent the unjust enrichment complained of, we think it may be said that in Ohio it is not the rule that the mere payment of the money in pursuance of the verbal contract is such a part performance as to take ’the case out of the *246 operation of the statute, or, in the absence of fraud, that it is such a circumstance as would invoke the equity jurisdiction of the court to impress a trust upon the property for the security of the loan.
There is general concurrence in the view, which is obviously just and equitable, that if one has been induced to- enter into and perform or partly perform an oral agreement concerning an interest in land by fraudulent misrepresentations as to existing conditions, financial ability of a party, or under circumstances which amount to fraud, a court of equity should refuse to let the statute be used as an instrument of fraud or to operate to prevent equitable relief. And there may be such part performance of a particular contract as to justify relief. As said in Shahan, Exr., v. Swan, 48 Ohio St., 25, at page 40: “Notwithstanding that it is the established rule in Ohio that the payment of the consideration, even in the personal services of the party seeking relief, does not ordinarily constitute such part performance as will take a case out of the operation of the statute of frauds, we do not wish to be understood to hold that' cases may not arise wherein specific performance of a contract in parol may be had on the ground that the consideration had been paid in personal services, not intended to be, and not susceptible óf being-measured by a pecuniary standard.” But where the entire transaction leading up to the loan of the money and the making of the verbal contract to execute the mortgage to secure the loan is open and free from fraud or false representation, the subsequent failure to give the mortgage is not such a *247 circumstance as to amount to fraud. Such a holding would open the door to the nullification of the statute of frauds under most any set of circumstances.
As we view the case it was a simple transaction by which Edward, the son, bought a piece of real estate and borrowed the money from his father to pay for it. He gave his promissory note to his father, payable in one year after date, with interest, and promised at the time that when he had received the deed and the title he would give his father a mortgage to secure the note. Some months after-wards the son died while absent from home without having executed and delivered the mortgage. When the father loaned the son the money, and received the note, the money became the property of the son. When the father was on the witness stand he testified as follows:
“Q. As far as Ed’s making it out to Theo was concerned that would be all right to you ?
“A. After I loaned him the money I had no right to direct what he was to do with it. He was to buy the property.”
We see no feature in that transaction out of which a trust can arise or can be impressed on the land. Moreover, while we are convinced that there is no ground upon which to grant the relief prayed for in this case, the father is not without his proper remedy. The estate of Edward Newman is indebted to his father, Herman C. Newman, in the sum of approximately $10,500.
It is conceded that when Edward Newman gave the money borrowed from his father to his wife to *248 buy the property, or when he paid the money to the owner of the property for the' deed to his wife, he gave or transferred it to her without consideration, and it is conceded that he was insolvent. Under these circumstances the gift or transfer was void as to existing creditors. The father is entitled to proceed by suit to set aside the gift or transfer and subject the property to the benefit of the creditors of the son, preserving the legal rights of all parties concerned therein. But holding only the notes as evidence of the indebtedness to him, and not having received the mortgage as security for the notes, there is no ground to prefer the father’s claim.
It is said in 25 Ruling Case Law, 267, Section 68: “The courts dre practically unanimous that the mere payment of a portion of the purchase money, unaccompanied by any other act, does not amount to part performance of an oral contract sufficient to take the case out of the ' statute of frauds. Even the payment of the whole consideration has been held not to be sufficient for that purpose. This is for the reason that the plaintiff is considered as having a sufficient remedy at law to recover back the money.”
In Cause No. 16734, Herman C. Newman v. Theo Elizabeth Newman et al., the judgment of the court of appeals is affirmed.
In Cause No. 16770, Theo Elizabeth Newman et al. v. Herman C. Newman, the judgment. of the court of appeals is reversed.
Hough, Robinson and Matthias, JJ., concur.